UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:08-CR-102 |
| | ) | |
| MITCHELL GRASKA | ) | |

REPORT AND RECOMMENDATION

Defendant has filed a Motion to Suppress [Doc. 583] which is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Oral argument was held on November 4, 2009.

Defendant Mitchell Graska is the owner of certain real property at 1321 Riggs Road in Houston, Texas upon which is located a business concern, Felton's R.V. Service. Felton's R. V. Service is owned at least to some extent by defendant. On October 17, 2008, John Hart, a Sergeant with the Texas Department of Public Safety Narcotics Service, obtained a search warrant for the property located at 1321 Riggs Road in Houston, Texas from a Texas State Court Magistrate in Harris County, Texas.

The affidavit executed by Sergeant Hart in support of the search warrant contains 23 numbered paragraphs and is 16 pages in length. Prominent as a source of information is Special Agent Mike Templeton of the Drug Enforcement Administration in Johnson City, Tennessee, the lead agent in the prosecution of this case. Only paragraphs 9, 16 and 17 mention Mitchell Graska, 1321 Riggs Road, or Felton's R.V. Service.

Paragraph 9 states that on December 4, 2007, Agent Templeton and other law enforcement officers conducted surveillance of co-defendant Jesus Huerta's residence in

Johnson City, in conjunction with execution of an arrest warrant for Mr. Huerta. After mentioning the apparent unimportant stop of a vehicle unrelated to the defendant, and the arrest of Mr. Huerta in possession of false identification and various vehicle titles, this paragraph of the affidavit states that: "[T]he surveillance also netted an additional traffic stop of a vehicle observed speeding after leaving Jesus Huerta's residence, which resulted in the seizure of $23,001.06 and 1.2 grams of cocain HCL from two individuals from Texas who claimed to be candle salesmen. The vehicle was registered to Mitchell GRASKA at the address of FELTON's R.V. SERVICE, located at 1321 Riggs Road, Houston, Texas 77022. The driver was identified as Raymundo GUERRA-Miller. . ."[1]

Paragraph 16 states that a search warrant was executed on July 30, 2008, by Agent Templeton and others at the residence in Johnson City of co-defendant Wiley Barnett. In Mr. Barnett's residence, a search of his bedroom revealed, among other items incriminating to Mr. Barnett and others, "one FELTON'S R.V. SERVICE receipt that Barnett stated he had stolen and falsely filled out for a 2005 Holiday Rambler R.V. that Barnett took to transport over 1/4 ton of marihuana to Springfield, Illinois;...(and) one FELTON'S R. V. SERVICE business card in the name of Mitchell GRASKA..."

Paragraph 17 describes the contents of a confession obtained from Mr. Barnett on July 30, 2008, "as to his participation in the marihuana trafficking activities of Jesus Huerta, Raymundo GUERRA, and others, including the transportation of 1/4 ton loads of marihuana

---

[1] The government's response states that "the defendant subsequently traveled to the Eastern District of Tennessee to get his truck out of impound." Whatever use can be made of this fact, it is beyond the four corners of the affidavit and cannot be used to determine the existence of probable cause for issuance of the search warrant.

in R.V.'s from Houston, TX to predetermined locations and the transportation of currency from Johnson, City, TN to Houston, TX." Mr. Barnett told the agents that he had been introduced to Jesus Huerta by a former fellow inmate in federal prison in 2003. This paragraph discusses in great detail various activities involving Mr. Barnett, Huerta and others (but not the defendant) with regard to delivering drugs and money "to and from Houston, TX" in January of 2008.

Barnett then described, again in great detail, a transaction involving him, Huerta, and co-defendant Jonathon Shell which took place in March of 2008 involving the transporting of a large amount of marihuana to Springfield, Illinois. Huerta and Shell took Barnett to a truck stop and told him he would be driving the marihuana to Springfield. The paragraph then contains the following language: "[W]hile at the truck stop, Barnett was to retrieve a 2005 Holiday Rambler. Barnett stated he had previously "taken" the R.V. from FELTON'S R.V. SERVICE in Houston, TX, where Barnett was employed at the time, and parked it at a 'fiesta' store and left it. Barnett stated he originally obtained the job at FELTON'S R. V. SERVICE after Raymundo GUERRA handed him the address and told Barnett he should seek employment there. Barnett stated GUERRA would come to FELTON'S R.V. SERVICE periodically. Barnett stated that GUERRA may be a silent owner in the business with Mitchell GRASKA. Barnett stated the R.V. would be taken by an unknown person(s) and loaded with marihuana, and at a later date and time Barnett would be contacted where the loaded R.V. could be retrieved for transport." There is no further mention of Graska, Felton R.V. Service, or 1321 Riggs Road in this paragraph or anywhere else in the affidavit. The paragraph then describes the route taken by Barnett to Springfield, where he left the R.V.

loaded with drugs, and the trip back to Houston in another vehicle. The remainder of the paragraph describes other drug delivery trips, some in R.V.'s from unknown sources, some in other vehicles.

The remainder of the affidavit describes other drug activity by Raymundo Guerra, Fancisco Lozano, and others.

The warrant was executed on October 20, 2008. The return indicates that 7 grams of marihuana was seized from the property. The response to the motion to suppress states that while executing the warrant, the agents found a receipt for a residence located at 1810 Roxella Street, Houston, Texas. Again according to the response, the defendant acknowledged that the owned that property and executed a consent to search. The response states that the defendant volunteered to the agents that he also owned real property at 1806 Roxella Street. Agents searched both locations. At 1806 Roxella Street, Jose Guadalupe Cano-Cruz, who resided at that location, executed a consent to search for that property.

Defendant moves to suppress the search of 1321 Riggs Road on the basis that the warrant does not establish probable cause, and that the warrant is not rescued by *United States v. Leon*, 468 U.S. 897 (1984), arguing that the affidavit "is so lacking in probable cause as to render official belief in its existence entirely unreasonable..." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). Defendant also moves to suppress the searches at 1810 Roxella Street and 1806 Roxella Street as "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963).

> The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation...." U.S. Const. amend. IV. To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the

4

premises of the proposed search." *United States v. Jenkins*, 396 F. 3d 751, 760 (6th Cir. 2005). This conclusion depends on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). The probable cause standard is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life." *Id*. at 231.

*Frazier*, at 531. However, "evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit." *Id.*

The statements in the affidavit show that there is probable cause to believe that Raymundo Guerra is a drug trafficker, who has utilized Wiley Barnett and others to deliver illegal drugs from Texas to various locations in the United States. A vehicle registered to the defendant was being driven by Guerra from the residence of Jesus Huerta, and when the vehicle was stopped it was found to contain drugs and money. A search of Wiley Barnett's residence yielded a receipt for an R.V. from defendant's business which Barnett stated that he had stolen and forged, and a business card of the defendant. Barnett gave a statement detailing the drug dealing activities of Guerra and others, that Guerra had told Barnett to seek work at Felton's R.V., and that Guerra would come to Felton's R.V. "periodically." He also said he had "taken" an R.V. from the defendant while employed there to be used in a drug run.

The government asserts that the defendant "takes a piecemeal approach to the dissection of the search warrant as it relates to the residence of the defendant. However, the defense overlooks the fact that all of the acts of the entire conspiracy, not just the incidents cited from the search warrant is what must be examined by the magistrate judge." The Court is not entirely sure what the government is arguing in the last sentence since no proof was offered as to what other information was placed before the magistrate which was omitted

5

from the affidavit, in any event, this Court, in determining the existence of probable cause from the dour corners of the instrument, cannot look at all acts of the entire conspiracy, except for those described in the affidavit. Neither may the Court look at what co-defendants may be volunteering to testify about at trial regarding Mr. Graska's role in the overall conspiracy, nor may it consider any mention of Mr. Graska or his business made during the course of hearing motions filed by other defendants. The Court cannot even look at the 7 grams (.246 ounces) of marihuana found in the search of this property.

The fact that Guerro was in possession of a vehicle belonging to the defendant which contained drugs and money does not, standing alone, implicate defendant as part of the conspiracy. Neither does the fact that Wiley Barnett once worked for the defendant and stole a receipt for a vehicle. Neither does the fact that Barnett appropriated a vehicle belonging to the defendant from his business while Barnett was employed there to be used for drug transportation. Mr. Barnett, who provided an exhaustive amount of details and names, notably did not implicate the defendant in the drug business of Mr. Guerra and others. In fact, he asserted that he had stolen the vehicle receipt from the defendant, and "taken" the Holiday Rambler to be used to transport the drugs. He described no aspect of the drug business being carried on at the residence other than his own thievery. Likewise, no law enforcement officer observed defendant engaging in any illegal activity, either at the residence or elsewhere.

This is not a situation where the defendant is shown to be a drug dealer, which would support a finding probable cause to search his residence for tools of the drug trade. Here, probable cause is lacking that demonstrates either defendant's involvement in the drug

6

conspiracy at issue, or the use of the real property in any fashion to further the conspiracy.

The government asserts that even if there is a lack of probable cause to search 1321 Riggs Road, the good faith exception of *Leon, supra*, is applicable.

> "Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances...must be considered. *Id*. at 922-23, n. 23....*Leon's* good faith exception does not apply in the following sets of circumstances: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*Frazier, supra,* at 533. The burden of showing that reliance on the warrant was objectively reasonable is upon the government.

There is nothing whatsoever to indicate that the first or second exceptions apply in this case. However, while this affidavit is not "bare bones" in the usual sense, it is detailed as to other persons and property, but not to the defendant or this property. The connection between the defendant and wrongdoing of any sort was not established by informants or by observations during investigation, but rather by facially innocent connections between the defendant and others for whom probable cause abounded. There is such a disparity between probable cause linking defendant to illegal activity that the Court cannot find that official belief in its existence to be reasonable. Accordingly, the Court finds that the good faith exception does not apply.

Since the existence of any connection between the defendant and the properties at

7

1806 and 1810 Roxella Street were only found during the illegal search, the subsequent consents and searches and items found thereby are the "fruit of the poisonous tree" and should likewise be suppressed.

It is respectfully recommended that the defendant's Motion to Suppress [Doc. 583] be GRANTED.[2]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).